IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

BONITA JO PUETZ,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-2020

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* .................................... 2

II.   *PRINCIPLES OF REVIEW* ............................ 2

III. *FACTS* ........................................... 3
    A.   *Puetz's Education and Employment Background* ......... 3
    B.   *Administrative Hearing Testimony* .................. 4
        1.   *Puetz's Testimony* ........................ 4
        2.   *Vocational Expert's Testimony* ............... 4
    C.   *Puetz's Medical History* ......................... 5

IV.  *CONCLUSIONS OF LAW* ............................ 8
    A.   *ALJ's Disability Determination* .................... 8
    B.   *Objections Raised By Claimant* .................... 10
        1.   *Dr. Kettman's Opinions* .................. 10
        2.   *Credibility Determination* ................. 14
    C.   *Reversal or Remand* ........................... 17

V.   *CONCLUSION* .................................. 18

VI.  *ORDER* ....................................... 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Bonita Jo Puetz on April 2, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Puetz asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Puetz requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On July 10, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Puetz's Education and Employment Background

Puetz was born in 1970. She is a high school graduate. In the past, Puetz worked as a mail carrier and telemarketer.

## B. Administrative Hearing Testimony

### 1. Puetz's Testimony

At the administrative hearing, Puetz testified that her primary psychiatric symptoms included anxiety and panic attacks "all the time," crying spells, and difficulty sleeping. Puetz described her panic attacks as having a racing heart, shortness of breath, numbness in her arms, and an urge to leave the situation and get home.

Physically, Puetz testified that she suffers from fibromyalgia and has constant pain in various places. Specifically, she stated "[i]t might be in my calf and then it could be my neck. I mean, it's just random sharp pain. Sometimes it's dull pain. But there's always pain someplace."[2] Puetz also testified that she cycles between constipation and having irritable bowel syndrome. According to Puetz, she also takes a daily nap lasting up to three hours because she tends to wake up every two hours at night.

The ALJ also questioned Puetz. The ALJ inquired why Puetz believed she is disabled. Puetz explained that she is disabled and unable to work because she suffers from constant pain, and her anxiety makes her unreliable. She also stated that her pain makes it difficult for her to concentrate or multi-task.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Jesse Ogren with a hypothetical for an individual who is able to:

> engage in light activity. However, our hypothetical individual should need no more than occasional need to climb ladders, ropes, or scaffolds, ramps or stairs, and should need no more than occasionally to crawl. Our hypothetical individual should also need no more than frequently to stoop, kneel, crouch. In addition, our hypothetical individual should be in a position where they need to use their left non-dominant upper extremity to reach on a no more than occasional basis. However, they

---

[2] Administrative Record at 46.

> can use their left non-dominant upper extremity to support or
> assist their right upper extremity. Our hypothetical individual
> should also be in a position where they have no more than
> occasional interaction with the general public and supervisors
> and they should be in a position where their tasks do not
> require intense focused attention for more than 30 minute
> segments, a continuous basis.

(Administrative Record at 86-87.) The vocational expert testified that under such limitations, Puetz could not perform her past relevant work, but could perform the following jobs: (1) inserter, (2) labeler, and (3) garment bagger.

### C. Puetz's Medical History

On August 19, 2011, Puetz met with Dr. Mohammed Iqbal, M.D., for an initial psychiatric evaluation. Dr. Iqbal noted Puetz had a history of major depressive disorder. Puetz reported feeling depressed. She further reported:

> sleep has gotten better, but she could sleep all day. She
> reports sometimes she feels worthless and even hopeless at
> times. She lacks energy. She reports no hobbies. At times,
> she feels guilty of what she is doing to her family. She
> currently denies any active suicidal ideation. She denies manic
> type symptoms.

(Administrative Record at 591.) Dr. Iqbal noted past medical history of hyperlipidemia, myocardial infarction with status post stent placement in January 2010, fibromyalgia, coronary artery disease, chronic bronchitis, and status post left shoulder repair. Dr. Iqbal also noted past psychiatric history of two suicide attempts in 2004 and 2008, by overdosing on prescribed medications. Puetz reported nightly marijuana use. Upon examination, Dr. Iqbal diagnosed Puetz with major depressive disorder and cannabis dependency. Dr. Iqbal rated her GAF score at 50. Dr. Iqbal prescribed medication and recommended psychotherapy as treatment.

On March 27, 2012, Puetz was referred by Disability Determination Services ("DDS") to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Puetz told Dr.

5

Roland that she believed she was unable to maintain full-time employment due to "pain from fibromyalgia, a 5 pound weight lifting restriction in her left arm [permanent injury that is work related], chest pain that ranges from 3 to a 5 or 6, 'if I'm really stressed out.' Chest pain is intermittent."[3] She reported her general state of health as "poor." She stated she had a permanent left shoulder injury, coronary artery disease, and fibromyalgia. According to Puetz, she has constant pain (rated at 4 on a scale of 1 to 10, with 10 being the greatest pain) due to fibromyalgia and her permanent left shoulder injury. Puetz admitted using marijuana twice per week. Dr. Roland reviewed Puetz's work status:

> [Puetz] has been with the post office on a full time basis for slightly more than 12 years. She is on a full time light restricted duty secondary to the work related injury to her left shoulder. She has a very stressful time at work secondary to not being able to keep up the pace at work that is required. The limited use of her left arm slows her down.
>
> [Puetz] has not been working since October 2011. She exhausted her family medical leave and is now on unpaid leave. She does not expect to be able to return to work in the foreseeable future.

(Administrative Record at 724.) Dr. Roland also addressed Puetz's daily and social activities:

> [Puetz] drives a vehicle. She is able to do limited shopping but cannot carry out heavy grocery bags. She is able to prepare simple meals, do light loads of laundry and light housekeeping. . . .
>
> In the area of social support, [Puetz] gets along well with her immediate family as well as her family of origin. She has no close friends, does not attend church nor belong to or participate in organized groups or activities.

---

[3] Administrative Record at 722.

(Administrative Record at 724.) Upon examination and testing, Dr. Roland diagnosed Puetz with major depressive disorder. Dr. Roland rated Puetz's GAF score at 60. Dr. Roland concluded Puetz's:

> primary deterrent to competitive employment appears to be physical health problems and moderate to severe Recurrent Major Depression. She has a 5 pound weight lifting restriction with her left arm, a permanent injury to her left shoulder [work related], chest pain from coronary artery disease, fibromyalgia and hypertension. Her depression is significant despite being treated by a psychiatrist.

(Administrative Record at 726.)

In November 2012, at the request of Puetz's attorney, Dr. Matthew Kettman, M.D., a treating source, filled out a "Fibromyalgia Residual Functional Capacity Questionnaire" for Puetz. Dr. Kettman indicated that Puetz meets the American College of Rheumatology criteria for fibromyalgia. Puetz's other diagnoses included bipolar disorder and coronary artery disease. Dr. Kettman identified the following symptoms for Puetz: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, irritable bowel syndrome, vestibular dysfunction, numbness and tingling, breathlessness, anxiety, panic attacks, and depression. Dr. Kettman described Puetz's pain as severe, constant, sharp, and achy. Dr. Kettman opined that changing weather, fatigue, movement, overuse, cold, static positioning, and stress exacerbate her pain. Dr. Kettman believed Puetz was capable of low stress jobs, but due to her pain, she would have "constant" difficulty with attention and concentration. Dr. Kettman determined that Puetz had the following functional abilities, she could: (1) walk 2 blocks; (2) sit for 30 minutes at one time; (3) stand for 30 minutes at one time; (4) sit, stand/walk for about 4 hours in an 8-hour workday; (5) occasionally lift less than 10 pounds; (6) occasionally twist, stoop, and climb; and (7) rarely crouch or squat. Lastly, Dr. Kettman opined that Puetz would need unscheduled breaks every 30 minutes, lasting 5 minutes, during an 8-hour workday.

7

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Puetz is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

8

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Puetz had not engaged in substantial gainful activity since October 13, 2011. At the second step, the ALJ concluded from the medical evidence that Puetz had the following severe impairments: status-post left shoulder injury, coronary artery disease, hypertension, status-post myocardial infarction with stent, fibromyalgia with fatigue, anxiety disorder, and major depressive disorder. At the third step, the ALJ found that Puetz did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Puetz's RFC as follows:

> [Puetz] has the residual functional capacity to perform light work . . . except no more than occasionally climb ladders, ropes, scaffolds, ramps, or stairs. [Puetz] can occasionally crawl. [She] can frequently stoop, kneel, and crouch. [She] can no more than occasionally use her left, non-dominant upper extremity to reach. However, [Puetz] can use her left,

> non-dominant upper extremity to support or assist the right upper extremity. Additionally, [Puetz] should have no more than occasional interaction with the general public and supervisors. [She] can perform tasks that do not require intense focused attention for more than thirty-minute continuous segments.

(Administrative Record at 21.) Also at the fourth step, the ALJ determined that Puetz is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Puetz could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Puetz was not disabled.

### B. Objections Raised By Claimant

Puetz argues the ALJ erred in two respects. First, Puetz argues the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Kettman. Second, Puetz argues the ALJ failed to properly evaluate her subjective allegations of pain and disability.

#### 1. Dr. Kettman's Opinions

Puetz argues the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Kettman. Specifically, Puetz argues the ALJ failed to properly weigh Dr. Kettman's opinions. Puetz also argues the ALJ failed to give "good" reasons for discounting Dr. Kettman's opinions. Puetz further argues the ALJ erred by failing to take Dr. Kettman's opinions into consideration when making his RFC determination. Moreover, Puetz asserts the ALJ's RFC assessment is flawed because it is not supported by substantial evidence from a medical source. Puetz concludes this matter should be remanded for further consideration of both Dr. Kettman's opinions and Puetz's RFC assessment.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion,

supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Furthermore, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts v. Apfel*, 143 F.3d at 1134, 1138 (8th Cir. 1998) (quotation omitted). Furthermore, if an ALJ rejects the opinions of an examining physician, the regulations require that the ALJ explain his or her reasons for not adopting such an opinion. *See* Social Security Ruling, 96-8p (July 2, 1996). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ asserts Dr. Kettman's opinions should be afforded "little" weight for two reasons: (1) Dr. Kettman's opinions are inconsistent with "the evidence"; and (2) Dr. Kettman's opinion that Puetz's limitations are five years old is inconsistent with his treatment of her for only one year. First, the ALJ's assertion that Dr. Kettman's opinions are "neither consistent with nor supported by the evidence, as described above" is problematic because the ALJ offers very little discussion of the medical evidence in his decision.[4] Dr. Kettman's opinions are derived from a "Fibromyalgia Residual Functional Capacity Questionnaire." In his decision, ALJ addresses Puetz's fibromyalgia in three sentences. The ALJ essentially acknowledges that Puetz has been diagnosed with fibromyalgia, and refers to one treatment note where she stated that ibuprofen helped relieve her pain.[5] The Court is unconvinced the ALJ's explanation that Dr. Kettman's opinions are inconsistent with "the evidence" is based on a fully and fairly developed record, or a full and fair consideration of Dr. Kettman's opinions. Second, the Court is unpersuaded by the ALJ's second line of reasoning. While Dr. Kettman's opinion that Puetz had fibromyalgia symptoms for five years may be overreaching, such reasoning alone is insufficient to discount the opinions of a treating source that has treated Puetz for one year, particularly when the ALJ fails to establish evidence in the record sufficient to discount Dr. Kettman's opinions. Lastly, as a treating source, Dr. Kettman's opinions should be fully developed and, if appropriate, properly discounted in order for the ALJ to make a meaningful RFC assessment. Here, the ALJ offers a detailed RFC assessment, but fails to support his assessment with evidence from the record or explain how he arrived at Puetz's RFC assessment. Significantly, the ALJ only discounts medical source opinions in his decision, but fails to discuss any medical source opinions that support his RFC

---

[4] *See* Administrative Record at 22-23 (providing the ALJ's discussion of the medical evidence, totaling six paragraphs amounting to little more than one page).

[5] *See* Administrative Record at 22.

13

determination. Having thoroughly reviewed the record and the ALJ's decision, it is unclear to the Court that the ALJ's decision is based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803.

Therefore, under such circumstances, and having reviewed the entire record, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Kettman. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Kettman's opinions. Additionally, the Court finds that the ALJ's RFC assessment requires further development, as it is unclear whether the RFC assessment is based on all the relevant evidence in the record. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Kettman's opinions and further development of Puetz's RFC. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Kettman's opinions and support his reasons with evidence from the record. The ALJ must also reconsider Puetz's RFC assessment and develop her RFC based on all the relevant evidence, including consideration of how Dr. Kettman's opinions relate to Puetz's RFC determination.

2. *Credibility Determination*

Puetz argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Puetz maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Puetz's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency,

14

and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968. If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'"

*Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[6] The ALJ also at various points in his decision, addressed two of the *Polaski* factors and offered some reasoning for finding Puetz's subjective allegations of disability less than credible.[7] The Court is unpersuaded, however, the ALJ gave "full consideration to all the evidence presented relating to [Puetz's] subjective complaints." *Polaski*, 739 F.2d at 1322. The ALJ's primary reason for discounting Puetz's subjective allegations is alleged inconsistencies with the objective medical evidence. However, as discussed in section *IV.B.1* of this decision, the ALJ failed to fully and fairly develop the record with regard to the medical evidence, particularly with regard to the opinions of Dr. Kettman, a treating physician. Additionally, the ALJ provides only one other reason for discrediting Puetz's subjective allegations, that medications have helped in treating her impairments. The ALJ offers no discussion of Puetz's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, or functional restrictions. Accordingly, the Court concludes the ALJ failed to fully meet the requirements for making a proper credibility determination in this matter.

In summary, the Court believes that in remanding this matter for further development of the medical record, including reconsideration of Dr. Kettman's opinions, the ALJ should also further consider Puetz's allegations of disability in light of his reconsideration of medical evidence. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's

---

[6] *See* Administrative Record at 21-22.

[7] *Id.* at 22-25.

complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Puetz's credibility determination. Furthermore, on remand, the ALJ shall set forth in detail his reasons for finding Puetz's subjective allegations to be credible or not credible. If on remand, the ALJ finds Puetz's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Puetz's subjective allegations and the evidence in the record.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability."

*Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly evaluate the opinions of Dr. Kettman and properly assess Puetz's RFC; and (2) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting Dr. Kettman's opinions and support his reasons with evidence from the record. The ALJ must also reconsider Puetz's RFC assessment and develop her RFC based on all the relevant evidence, including consideration of how Dr. Kettman's opinions relate to Puetz's RFC determination. The ALJ shall also consider all of the evidence relating to Puetz's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations when determining Puetz's credibility.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 28th day of December, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA